DYLAN OBRECHT, SHELBY STINSON,
MACKENZIE STAFFORD and GRACE
GILBERT, individually and on behalf of all          JURY TRIAL DEMANDED
others similarly situated,

               *Plaintiffs,*

    v.

CENTRAL GARDEN & PET COMPANY,          Case No.:  4:15-cv-00046-MW-CAS

               *Defendant.*

## ANSWER TO CLASS ACTION COMPLAINT

Defendant, Central Garden & Pet Company (hereinafter "Central Garden") hereby responds to the Class Action Complaint filed by Plaintiffs, Dylan Obrecht, Shelby Stinson, Mackenzie Stafford, and Grace Gilbert, individually, and on behalf of all other similarly situated persons, (hereinafter "Plaintiffs"), by and through its undersigned counsel, as follows:

### SUMMARY OF THE CASE

1.     Central Garden & Pet Company, is a company that manufactures, markets and labels pet food products named AvoDerm Natural.  Defendant's marketing and labeling practices of AvoDerm Natural claims to offer "natural" pet food products which are made from natural ingredients, thus void of synthetic and/or artificial ingredients.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 1 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

2.     Defendant manufactures a line of pet food products (hereinafter referred to as "AvoDerm Natural") sold with a label that, in describing the contents, displays the word

"natural." In truth, AvoDerm Natural contains synthetic and/or artificial chemical compounds including but not limited to tocopherols, ascorbic acid, lecithin, ferrous sulfate, manganese sulfate, and copper sulfate.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 2 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

3.      Defendant knowingly and purposefully failed to disclose to its consumers that AvoDerm Natural contains synthetic and/or artificial chemical compounds, making these products falsely labeled and not actually "natural." The AvoDerm Natural products include, but are not limited to, the following:

- AvoDerm Natural Grain Free Salmon Meal & Potato Formula for Dogs;

- AvoDerm Natural Grain Free Red Meat Meal & Potato Formula for Dogs;

- AvoDerm Natural Grain Free Ocean Fish & Chicken Meal Formula for Cats;

- AvoDerm Natural Grain Free Turkey Meal Formula for Cats.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 3 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

4.      Defendant knowingly and purposefully failed to disclose to its consumers that the AvoDerm Natural products are not actually "natural." To this day, Defendant has taken no meaningful steps to clear up consumers' misconceptions regarding its product.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 4 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

5.      As a consequence of Defendant's unfair and deceptive practices, Plaintiffs, and members of the Class, purchased AvoDerm Natural products under the false impression that, by purchasing Defendant's goods they would be receiving products that were in fact "natural," or

completely void of synthetic and/or artificial ingredients. Through their deceptive practices, Defendant sold its "natural" products to thousands of consumers and received a substantial financial profit.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 5 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

6. Significantly, **each** consumer has been exposed to the **same** material misrepresentations and/or omissions, which are prominently displayed on the product packaging for AvoDerm Natural products, and on Defendant's website, prior to purchasing the products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 6 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

7. Despite the fact that AvoDerm Natural products contain synthetic and/or artificial chemical ingredients, the front labels of Defendant's AvoDerm Natural products display the word "Natural."

**ANSWER:** Central Garden denies the allegations contained in Paragraph 7 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

8. Under Federal law, products such as Defendant's AvoDerm Natural products are "misbranded" if their "labeling is false or misleading in any particular," or if they do not contain certain information on their labeling. *See* 21 U.S.C. § 343(a).

**ANSWER:** Central Garden denies the allegations contained in Paragraph 8 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

9. Further, any violation of 21 U.S.C. § 343(a) also constitutes violations of Florida's Consumer Protection Statues §§501.201-501.213 (2014), Florida Deceptive and Unfair Trade Practice Act, False Advertising pursuant to Fla. Stat. § 817.44 (2014), Breach of Express

Warranty; Breach of Implied Warranties for Merchantability and Usage of Trade Pursuant to Fla. Stat. §672.314 (2014), Breach of Implied Warranty pursuant to Uniform Commercial Code §2-314 (2014), Negligence and Unjust Enrichment.  In this action, Plaintiffs assert claims under these state statutes, as well as under common law.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 9 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

10.     For the reasons stated herein, Defendant's AvoDerm Natural products sold in the United States are misbranded and illegal.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 10 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

11.     Plaintiffs now seek to stop Defendant's unlawful conduct.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 11 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

## PARTIES

12.     Plaintiffs, Dylan Obrecht, Shelby Stinson, Mackenzie Stafford, and Grace Gilbert, purchased Defendant's AvoDerm Natural products in this State and this District within the four years preceding the filing of this action (the "Class Period").

**ANSWER:**  Central Garden lacks sufficient knowledge to admit or deny the allegations contained in paragraph 12 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

13.     In or about January 2015, Plaintiff, Dylan Obrecht, purchased AvoDerm Natural Grain Free Salmon Meal & Potato Dry Dog Food 24 pound bag for $55.99 at a Petco pet store in this State and this District within the four years preceding the filing of this action.

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in paragraph 13 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

14.     In or about November 2014, Plaintiff, Shelby Stinson, purchased AvoDerm Natural Grain Free Red Meat Meal & Potato Dry Dog Food 24 pound bag for a premium $52.99 at a Petco pet store in this State and this District within the four years preceding the filing of this action.

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in paragraph 14 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

15.     In or about October 2014, Plaintiff, Mackenzie Stafford, purchased AvoDerm Natural Grain Free Ocean Fish & Chicken Meal Formula Adult Cat Food 24 pound bag for a premium $32.99 at a Petco pet store in this State and this District within the four years preceding the filing of this action.

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in paragraph 15 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

16.     In or about December 2014, Plaintiff, Grace Gilbert, purchased AvoDerm Natural Grain Free Turkey Meal Formula Adult Cat Food 24 pound bag for a premium $32.99 at a Petco pet store in this State and this District within the four years preceding the filing of this action.

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in paragraph 16 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

17.     Plaintiffs are and, throughout the entire class period asserted herein, have been very concerned about, and try to avoid, purchasing foods for their pets that are not natural—such as foods that contain synthetic and/or artificial chemical ingredients.  For this reason, Plaintiffs were willing to pay a premium price for pet foods that were "natural."  Based on the "natural" representation on Defendant's AvoDerm Natural products' labels, Plaintiffs and members of the Class reasonably believed the products they purchased were "Natural" and relied on this representation in making the purchases thereof.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 17 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

18.     Not only did Plaintiffs purchase the AvoDerm Natural products because the labels said they were "natural," Plaintiffs also paid more money for the products than they would have paid for other similar products that contained synthetic and/or artificial ingredients.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 18 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

19.     Had Plaintiffs known the truth—that the AvoDerm Natural products were not "natural"— they would not have purchased these products, and would not have paid the premium price for these products.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 19 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

20.     Defendant, Central Garden & Pet Company, is a corporation incorporated in the State of Delaware, with its principal place of business located at 1340 Treat Boulevard, Suite 600, Walnut Creek, California 94597.

**ANSWER:**  Central Garden admits the allegations contained in Paragraph 20.

21. Defendant is a corporation that produces, advertises, markets, sells and distributes the AvoDerm Natural products throughout the United States, including in this State, District, and Division.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 21 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

## JURISDICTION AND VENUE

22. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) a member of the class of Plaintiffs are citizens of a State different from the Defendant; and (3) the number of members of all proposed Plaintiff classes in the aggregate is greater than 100.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 22 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

23. This Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoings alleged herein occurred in Florida. Defendant also has sufficient minimum contacts with Florida, and has otherwise intentionally availed itself to the markets in Florida through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 23 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

24. Venue is proper in this District pursuant to 28 U.S.C. § 139(b)(2) and (3) because a substantial part of the events or omissions giving rise to these claims occurred in this District, a substantial part of the events or omissions giving rise to the claim occurred within this District, Defendant caused harm to Plaintiffs in this District, and Defendants are subject to the Court's

personal jurisdiction with respect to this action.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 24 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

## FACTS RELEVANT TO ALL CLAIMS

*Definition of "Natural"*

25.     Representing that a food product or ingredient is "natural" is a statement of fact, and this term has been defined by the federal governmental agencies that regulate food companies such as the Defendant.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 25 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

26.     Although the Food and Drug Administration (FDA) does not directly regulate the term "natural," the FDA has established a policy defining the outer boundaries of the use of that term by clarifying that a product is not natural if it contains color, artificial ingredients or flavors, or synthetic substances.  Specifically, the FDA states: "the agency will maintain its policy regarding the use of 'natural,' as meaning nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food."  58 Fed. Reg. 2302, 2407 (Jan. 6, 2003).

**ANSWER:** Central Garden denies the allegations contained in Paragraph 26 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

27.     Pursuant to 7 C.F.R. § 205.2, an ingredient is synthetic and/or artificial if it is:

> *Synthetic*.  A substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.

> *Nonsynthetic (natural)*.  A substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process as defined in section 6502(21) of

the Act (7 U.S.C. 6502(21)).  For the purposes of this part, nonsynthetic is used as a synonym for natural as the term is used in the Act.

**ANSWER:**  To the extent Plaintiffs quote 7 C.F.R. § 205.2, Central Garden states that the regulation speaks for itself but otherwise denies the allegations contained in Paragraph 27 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

28.     Similarly, the USDA's Food Safety and Inspection Service ("FSIS") defined a natural product as, "a product that does not contain any artificial or synthetic and/or artificial ingredients and does not contain any ingredient that is more than "minimally processed":

> Minimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices.
> Relatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing...

See USDA FSIS, Food Standards and Labeling Policy Book, available at www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf.

**ANSWER:**  To the extent Plaintiffs quote USDA FSIS, Food Standards and Labeling Policy Book, Central Garden states that the book speaks for itself but denies the allegations contained in Paragraph 28 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

29.     In addition, in an FDA letter to Judges Yvonne Gonzalez Rogers, Jeffrey S. White, and Kevin McNulty, regarding the judges' request for the agency to make a determination about whether and under what circumstances food products containing ingredients produced using certain synthetic and/or artificial ingredients may be labeled "natural," the FDA writes:

> FDA has not promulgated a formal definition of the term "natural" with respect to foods.  The agency has, however, stated that its policy regarding the use of the term "natural" on food labeling means that "nothing artificial or synthetic

(including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to bin tin the food."

*See* 58 Fed. Reg. 2302, 2407 (1993).

**ANSWER:** To the extent Plaintiffs quote 58 Fed. Reg. 2302, 2407 (1993), Central Garden states that the Federal Register speaks for itself but otherwise denies the allegations contained in Paragraph 29 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

30.     A reasonable consumer's understanding of the term "natural" comports with these federal definitions.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 30 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

31.     A reasonable consumer would also expect that Defendant's products are what Defendant identifies them to be on its labels (i.e. that they are "natural" and thus void of synthetic and/or artificial ingredients).

**ANSWER:** Central Garden denies the allegations contained in Paragraph 31 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

*The Products' Synthetic and/or artificial Ingredients*

32.     **Tocopherols are not "natural" preservatives.** Tocopherols are a family of Vitamin E compounds which, typically, are found in leafy green vegetables, vegetable oils, fish and nuts.  Tocopherols are commercially manufactured and mass produced in an attempt to utilize them as preservatives that extend the shelf life of products.  Since there is usually a long span of time between the product's production and the time of purchase, commercial foodstuffs are typically loaded with preservatives, such as tocopherols, to allow them to remain as fresh as possible for as long as possible.  Although said preservatives are fairly effective in extending the

longevity of the products, they are still extremely unhealthy.  Many cause and/or promote skin problems while others have been reported to cause cancer.  According to an article on the use of preservatives to extend the shelf life of products, there is no such thing as a natural preservative, "natural substances that show antimicrobial activity are either not adequate for broad spectrum protection or they have undesirable qualities."[1]  Furthermore, taking synthetic and/or artificial vitamin E (tocopherols) can increase the risk of prostate cancer by 17%.  Additionally, in a Fact Sheet on Vitamin E, the U.S Department of Health & Human Services writes that, "HOPE-TOO [a follow up to clinical trial HOPE] found that Vitamin E provided no significant protection against heart attacks, strokes, unstable angina, or death from cardiovascular disease or other causes after 7 years of treatment."  The fact sheet then goes on to specify that, "Participants taking Vitamin E, however, were 13% more likely to experience, and 21% more likely to be hospitalized for, heart failure, a statistically significant...finding."  The participants in the clinical trials were given **natural** Vitamin E and still, "experienced no fewer cardiovascular events or hospitalizations for heart failure or chest pain than participants taking a placebo."  Therefore, no argument can be made for the benefits of synthetic Vitamin E - such as those in question in this complaint - since, according to the same article, synthetically produced tocopherols are only half as effective as the same amount of the natural form, and the natural forms are proven ineffective.[2]

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 32 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

33.  **Ascorbic Acid.**  Ascorbic acid is the synthetic and/or artificial version of vitamin C and, as such, does not differentiate between good and bad bacteria in the intestines, once

---

[1]  https://www.fromnaturewithlove.com/library/preservatives.asp
[2]  http://ods.od.nih.gov/factsheets/VitaminE-HealthProfessional/

consumed.  Consequently, the chemical kills good bacteria essential for healthy development and digestion.  Synthetic and/or artificial vitamin C, or ascorbic acid, is not found in nature - it cannot be taken from plants or trees, for instance - it can only be made in a lab.  Consequently ascorbic acid and vitamin C are not truly the same thing.  As a matter of fact, ascorbic acid does not contain the full complex of elements that define vitamin C.  This absence is precisely what makes ascorbic acid so destructive—the full range of elements present in vitamin C must be present in its synthetic and/or artificial counterpart in order for the body to absorb and benefit from the complex.  According to an article published by Diamond Back Drugs on the veterinary uses of ascorbic acid, "excessive use of [ascorbic acid] can cause the formation of calculi in the kidneys.  Intestinal irritation and diarrhea can also occur with large doses and in very rare cases, anemia can develop."  Furthermore, the article states, "some animals have been found to be sensitive to ascorbic acid."[3]  Furthermore, according to an article published in PetPlace.com regarding the use of ascorbic acid for dogs and cats, "in dogs and cats, ascorbic acid is manufactured in the liver and normally does not need to be supplemented.  Claims that nutritional deficiency of ascorbic acid causes scurvy in dogs and cats are probably inaccurate."  The article goes on to state that, "ascorbic acid...should not be administered except under the supervision and guidance of a veterinarian."[4]  Additionally, in a fact sheet on ascorbic acid by the U.S Department of Health & Human Services, the most common side effects of excessive use are, "diarrhea, nausea, abdominal cramps, and other gastrointestinal disturbances."  Furthermore, the fact sheet notes that, "a few studies in vitro have suggested that by acting as a pro-oxidant, supplemental oral vitamin C could cause chromosomal and/or DNA damage and

[3]  http://www.diamondbackdrugs.com/ascorbic-acid-in-veterinary-use/
[4]  http://www.petplace.com/drug-library/ascorbic-acid-vitamin-c/page1.aspx

possibly contribute to the development of cancer."[5]

**ANSWER:** Central Garden denies the allegations contained in Paragraph 33 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

34.    **Lecithin.**  Though lecithin is naturally found in some foods, food manufacturers utilize commercial lecithin, which is not naturally occurring and is a mixture of phospholipids in oil.  In a petition to the USDA to remove lecithin from the National List of Synthetics Allowed in Organics, Dr. Bernard Szuhaj, an expert on lecithin, states, "commercial lecithin is made from crude soybean oil extracted from soybean flakes with **hexane**.  The crude soybean oil is treated with water or stream to precipitate the lecithin as gums.  These wet gums are centrifuged and dried.  Soybean oil and fatty acids are added to standardize the products."  Dr. Szuhaj then goes on to say that, "the hexane used in commercial soybean processing is a neurotoxicant.  In powdered and granular lecithin, acetone is used to precipitate the phospholipids from the oil and the acetone is removed by filtration and evaporation.  Oxidized acetone may result in the acetone recovery process producing toxic compounds such as mesityl oxide and isopherone."  In the same document found on the USDA website, a USDA/Tap Reviewer Comment Form states that, "chemically modified lecithins are synthetic substances and should not be allowed under this classifications [National List]."  Furthermore, the USDA Reviewer Form states that, "there is certainly a chance that trace amounts of **hexane** can be found in lecithin.  Optimally lecithin from cold pressed oils would be a preference in the organic industry.  However, the quality of these lecithins has been very poor."  About ingesting **hexane**, which can be found in lecithin, the document states that, "[hexane] may produce abdominal pain, nausea.  Aspiration into lungs can produce severe lung damage and is a medical emergency."[6]  Furthermore, lecithin must be

---

[5]  http://ods.od.nih.gov/factsheets/VitaminC-HealthProfessional/
[6]  http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5073281

modified in order to make it suitable for the product to which it is added. Consequently, manufacturers typically hydrolyze lecithin enzymatically. According to the FDA, "Food grade lecithin is a complex mixture of substances derived from the **processing** of soybean, corn, or safflower oil."[7] Furthermore, lecithin may be modified by a process called fractionation during which lecithin is mixed with alcohol. Thus, lecithin is highly processed. According to an article on the side effects of lecithin use in dogs and cats published in a veterinary website, some side effects of lecithin use may include, "vomiting, diarrhea, bloating, lack of appetite, gas, [and] skin rashes."[8]

**ANSWER:** Central Garden denies the allegations contained in Paragraph 34 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

35. **Ferrous Sulfate.** Ferrous Sulfate is a type of iron added to dog food to boost iron content. Besides being commercially produced through chemical means such as the oxidation of pyrite, iron is the most abundant trace mineral in a dog's body and, consequently, not a necessary supplement. Furthermore, consuming too much iron may be toxic. According to the ASPCA, iron toxicity is a very common problem among animals. In a toxicology brief by Jay Alberetson, DVM, PhD, DABT, DABVT, of the ASPCA, "one reason iron toxicosis is such an important problem is that the general public is often unaware of the potential toxicity of products that are considered natural." Furthermore, since iron is already present - in high amounts - in dogs' bodies, more of it from outside sources may lead to increase chances of iron poisoning since, "toxicity depends on the amount of iron already in the body." The brief goes on to note that, "some animals develop clinical signs of toxicosis even when they receive doses that cause no

[7] http://www.accessdata.fda.gov/scripts/fcn/fcnDetalNavigation.cfm?rpt=scogsListing&id=185
[8] http://www.vetinfo.com/lecithin-for-dogs.html#b

problems in other animals."[9]  Common side effects of an excess of iron in animals are vomiting,

diarrhea, depression, gastrointestinal hemorrhage and abdominal pain, among others.  According

to the U.S Department of Health & Human Services, "acute intakes of...iron...can lead to gastric

upset, constipation, nausea, abdominal pain, vomiting, and faintness."  Furthermore, they note,

"between 1983 and 2000, at least 43 U.S. children died from ingesting supplements containing

high doses of iron...Accidental ingestion of iron supplements cause about a third of poising

deaths among children reported in the United States between 1983 and 1991"[10]

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 35 and states that the

products named in the Complaint are made by a subsidiary of Central Garden.

36.    **Manganese Sulfate.**  Manganese sulfate is a commercially significant manganese

salt.  It is estimated that 260 thousand tons of this chemical compound were produced worldwide

in 2005 alone.  Manganese sulfate is produced in laboratories by treating manganese dioxide

with sulfur dioxide.  In addition, manganese sulfate is a by-product of various industrially

significant oxidations that use manganese dioxide.  Furthermore, it has been established that

manganese sulfate is harmful if inhaled and sometimes harmful is swallowed.  Exposure may

cause eye, skin, and respiratory tract irritation and may even lead to lung damage, and central

nervous system effects.  Additionally, ingestion may cause gastrointestinal irritation with nausea,

vomiting and diarrhea.[11]  Furthermore, according to the EPA, "chronic (long-term) exposure to

high levels of manganese by inhalation in humans may result in central nervous system (CNS)

effects.  Visual reaction time, hand steadiness, and eye-hand coordination were affected in

chronically-exposed workers."  The EPA also states that, "A syndrome named manganism may

result from chronic exposure to higher levels; manganism is characterized by feelings of

---

[9]  http://www.aspcapro.org/sites/pro/files/zn-vetm0206_082-090.pdf
[10]  http://ods.od.nih.gov/factsheets/Iron-HealthProfessional/
[11]  http://www.labchem.com/tools/msds/msds/75541.pdf

weakness and lethargy, tremors, a mask-like face, and psychological disturbances." It is also noted that, "effects to the lung have been reported following acute [short-term] exposure of rats to manganese via inhalation." Regarding reproductive and developmental effects of manganese in animals, the EPA notes, "animal studies have reported degenerative changes in the seminiferous tubules leading to sterility from intratracheal instillation of high doses of manganese...In young animals exposed to manganese orally, decreased testosterone production and retarded growth of the testes were reported." Furthermore, though the EPA states that oral human and animal studies on manganese may be inadequate, it goes on to say that, "several animal studies reported an increased incidence of thyroid gland follicular cell adenomas and hyperplasia, or increased incidence of pancreatic tumors."[12]

**ANSWER:** Central Garden denies the allegations contained in Paragraph 36 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

  37.  **Copper Sulfate.** Copper sulfate is an inorganic compound that combines sulfur with copper. The toxicity of copper sulfate depends on the copper content. Copper sulfate has been registered for use in pesticide products in the United States since 1956. Furthermore, it is produced industrially by treating copper metal with hot concentrated sulfuric acid. According to an article on the toxicity of copper sulfate by Cornell University, "symptoms are severe...if copper sulfate is retained in the stomach." The article goes on to state that some side effects include burning pain in the chest and abdomen, intense nausea, vomiting, diarrhea, headache, sweating, shock, discontinued urination, injury to the brain, liver, kidneys, stomach and intestinal linings. Furthermore, the article notes that, "copper sulfate can be corrosive to the skin and eyes. It is readily absorbed through the skin and can produce a burning pain, along with the same

---

[12] http://www.epa.gov/airtoxics/hlthef/manganes.html

severe symptoms of poising from ingestion."[13]  Further, the FDA defines Copper Sulfate as usually being used in "the pentahydrate form.  This form occurs as large, deep blue or ultramarine, triclinic crystal; as blue granules, or as a light blue powder.  The ingredient is prepared by the **reaction** of **sulfuric acid** with **cupric oxide** or with **copper metal**."[14] Additionally, in a Compound Summary of copper sulfate with the U.S. National Library of Medicine, the compound is manufactured by a, "reaction of scrap or shot copper with dilute sulfuric acid and air."  Furthermore, it is a, "byproduct of copper electrolysis and etching process product is generally only suitable for agricultural purposes."  Copper sulfate may also cause pain and redness of the skin, coughs, sore throat, blurred vision, abdominal pain, burning sensation, nausea, vomiting, and diarrhea, among other things.  The summary goes on to state that, "the substance is severely irritating to the eye and skin... [is] corrosive on ingestion.  Ingestion could cause effects on the blood, kidneys and liver."[15]

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 37 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

38.     While Defendant labels its AvoDerm Natural products at issue in this matter as "natural," tocopherols, ascorbic acid, lecithin, ferrous sulfate, manganese sulfate, and copper sulfate, ingredients in Defendant's product, are synthetic and/or artificial compounds.  Further, there are warnings that the excessive use of the aforementioned ingredients can lead to: anal irritation, burning sensation, diarrhea, gas, nausea, and stomach cramps, among other side effects, in animals.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 38 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

---

[13]  http://pmep.cce.cornell.edu/profiles/extoxnet/carbaryl-dicrotophos/copper-sulfate-ext.html
[14]  http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/CFRSearch.cfm?fr=184.1261
[15]  http://pubchem.ncbi.nlm.nih.gov/compound/Copper_sulfate#section=Toxicity

39.     While Defendant's "natural" food labels did disclose that they contain these ingredients, those labels did not disclose that these ingredients are synthetic and/or artificial. This is a significant and material omission given Defendant's "natural" representation on the food product labels.  Based on said representation, one would normally expect that none of the ingredients in Defendant's food products would be synthetic and/or artificial or artificial.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 39 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

40.     According to the product labels, Defendant's food products contain the recognized synthetic and/or artificial ingredients identified herein, as follows:

- AvoDerm Natural Salmon Meal & Potato Formuals for Dogs: tocopherols, ascorbic acid, lecithin, ferrous sulfate, manganese sulfate, and copper sulfate.

- AvoDerm Natural Grain Free Red Meat Meal & Potato Formula for Dogs: tocopherols, ascorbic acid, lecithin, ferrous sulfate, manganese sulfate, and copper sulfate.

- AvoDerm Natural Grain Free Ocean Fish & Chicken Meal Formula for Cats: tocopherols, ascorbic acid, lecithin, ferrous sulfate, manganese sulfate, and copper sulfate.

- AvoDerm Natural Grain Free Turkey Meal Formula for Cats: tocopherols, ascorbic acid, lecithin, ferrous sulfate, manganese sulfate, and copper sulfate.

*See* 7 C.F.R. 205.105; 7 C.F.R. 205.601; 7 C.F.R. 205.603; 7 C.F.R. 205.605

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 40 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

41.     The labeling of products as "natural," carries implicit health benefits that are highly important to consumers, when it comes to their pet's diet—benefits for which consumers are willing to pay a premium price over comparable products that are not natural.  Over the past several years, Defendant has cultivated and reinforced a corporate image that has catered to this "natural" theme and has boldly placed this claim on each and every one of its products, despite

the fact that Defendant uses synthetic and/or artificial ingredients in the products identified above.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 41 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

42. Defendant has used the term "natural" to shape its brand and sell its pet foods. Yet, the existence of synthetic and/or artificial ingredients in its pet food renders the use of the label "natural" false and misleading. In manufacturing it products, Defendant had a choice between using natural or synthetic and/or artificial ingredients. It purposefully chose to use synthetic and/or artificial ingredients, but nonetheless labeled its food products as "natural."

**ANSWER:** Central Garden denies the allegations contained in Paragraph 42 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

***AvoDerm Natural's Products are Misbranded and Illegal***

43. All containers of AvoDerm Natural products sold in the United States are misbranded, falsely labeled, and as such are illegal.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 43 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

44. Their sale constitutes violations of the FDCA, Florida's Consumer Protection Statues §§501.201-501.213 (2014), Florida Deceptive and Unfair Trade Practice Act, False Advertising pursuant to Fla. Stat. § 817.44 (2014), Breach of Express Warranty pursuant to Fla. Stat. §672.313 (2014),; Breach of Implied Warranties for Merchantability and Usage of Trade pursuant to Fla. Stat. §672.314 (2014), Negligence and Unjust Enrichment.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 44 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

45. With the nutritional and health benefits of "natural" foods becoming widely

known, consumer demand for these products has increased rapidly, expanding to all aspects of life, including what consumers choose to feed their pets.  It was this enormous new market that Defendant hoped to tap with the sale of its AvoDerm Natural products.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 45 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

46.     Defendant knowingly and intentionally sold these misbranded and falsely labeled products to consumers (including Plaintiffs) with the intent to deceive them.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 46 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

47.     Plaintiffs purchased AvoDerm Natural products within the Class Period.

**ANSWER:**  Central Garden lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 47 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

48.     Despite the prevalence of synthetic and/or artificial ingredients in the Subject Products, the front labels of the AvoDerm Natural products display the words "Natural."

**ANSWER:**  Central Garden states that the labels on the products referenced in the Complaint speak for themselves but denies the allegations contained in Paragraph 48 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

49.     AvoDerm Natural products mislead consumers into believing the products consist of only "Natural" ingredients, when they in fact contain the synthetic and/or artificial chemical ingredients tocopherols, ascorbic acid, lecithin, ferrous sulfate, manganese sulfate, and copper sulfate.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 49 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

50.     Had Plaintiffs known that AvoDerm Natural products were not "natural," Plaintiffs would not have purchased these AvoDerm Natural products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 50 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

51.     Had Plaintiffs known that AvoDerm Natural products were illegally sold products, Plaintiffs would not have purchased AvoDerm Natural products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 51 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

52.     Plaintiffs' reliance was reasonable.  A reasonable consumer would have been misled by Defendant's actions.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 52 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

53.     With respect to AvoDerm Natural products, Defendant has violated the FDCA and regulations promulgated thereunder.  Specifically 21 U.S.C. 321(f) provides "the term 'food' means (1) articles used for food or drink for man or other animals."

**ANSWER:** Central Garden denies the allegations contained in Paragraph 53 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

54.     Defendant has violated 21 U.S.C. 331(a).  Specifically, 21 U.S.C. 331(a) provides that it is unlawful to introduce or deliver for introduction into interstate commerce any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 54 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

55. Defendant has violated 21 U.S.C. 331(b). Specifically, 21 U.S.C. 331(b) provides that the act of adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce is prohibited.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 55 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

56. Defendant has violated 21 U.S.C. 331(c). Specifically, 21 U.S.C. prohibits the receipt in interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 56 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

57. Defendant has violated 21 U.S.C. 331(g). Specifically, 21 U.S.C. 331(g) provides that it is unlawful to manufacture within any territory any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 57 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

58. The FDCA generally prohibits misleading labeling. *See* 21 U.S.C. § 343(a) ("A food shall be deemed to be misbranded" if "its labeling is false or misleading in any particular."). Furthermore, although the FDA has not issued a regulation defining the word natural, it has articulated a "policy," defining natural to mean, "that nothing artificial or synthetic and/or artificial...has been included in, or has been added to, a food that would not normally be expected to be in the food." *See* 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993); *see also* FDA Warning Letter to

Alexia Foods, Inc. (Nov.16, 2011),

http://www.fda.gov/ICECI.Enforcementactions/WarningLetters/ecm281118.htm (describing

SAPP as "a synthetic and/or artificial chemical preservative," and stating that the term "All

Natural" on a food product containing SAPP "is false and misleading").  The conduct Plaintiffs

allege - that Defendant misled customers by labeling as "natural" dog food products that contain

tocopherols, ascorbic acid, lecithin, ferrous sulfate, manganese sulfate, and copper sulfate- thus

violates the FDCA.  Plaintiffs have not, however, sued because the conduct violates the FDCA.

Rather, their claims are based on Florida statues as well as the common law, law that could exist,

"even if the FDCA were never passed."  *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-

02724-LHK, 2013 WL 5487236, at *7 (N.D. Cal. Oct. 2, 2013).

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 58 and states that the

products named in the Complaint are made by a subsidiary of Central Garden.

59.     It is plausible that a reasonable consumer, such as Plaintiffs and members of the

Class, could interpret the words "natural" to exclude synthetic and/or artificial compounds such

as tocopherols, ascorbic acid, lecithin, ferrous sulfate, manganese sulfate, and copper sulfate, and

therefore be misled by Defendant's labeling.  *See, e.g., Vicuna v. Alexia Foods, Inc.*, No. 11-

6119 (PJH), 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) (holding that "whether a

reasonable consumer" of a product that contains SAPP "would likely be deceived by the

designation 'All Natural' is a factual dispute" that cannot be resolved at the motion to dismiss

stage); *see also Janney v. Mills*, No. 12-cv-03919 (WHO), 2014 WL 1266299, at *3 (N.D. Cal.

Mar. 26, 3014) (collecting cases in which "[c]ourts have found similar claims challenging the

terms 'all natural' and 'natural' to be sufficient basis for a cause of action under California's

consumer protection laws"); *Morales v. Unilever U.S., Inc.*, No. 13-cv-2213 (WBS), 2014 WL

1389613, at *7 (E.D. Cal. Apr. 9, 2014) (explaining that "the relevant question" in a deceptive labeling case "is the meaning that consumers would attach to the term" at issue and that "this is generally not a question that can be resolved on a motion to dismiss"); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp 2d 1066, 1080 (E.D. Cal. 2010) ("[P]laintiffs allege that they were deceived by the labeling of defendant's drink products as 'All Natural' because they did not believe that the product would contain [high fructose corn syrup]...[P]laintiffs have stated a plausible claim that a reasonable consumer would be deceived by defendant's labeling.")

**ANSWER:** Central Garden denies the allegations contained in Paragraph 59 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

***Defendant's Strategy to Appeal to Health-Conscious Consumers***

60.     Defendant engaged in this fraudulent advertising and marketing scheme because it knew that its target market pays more for "natural" dog food products than for conventional dog food products. This is due to the association consumers make between "natural" dog food products and a wholesome way of life for pets, the perceived higher quality, health and safety benefits of the products, and/or low impact on the environment.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 60 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

61.     As such, Defendant's "natural" labeling is central to its marketing of the products and part of its overall strategy to capture the rapidly expanding natural foods market. As a result, Defendant commands a premium price for the products; using "natural" claims to distinguish them from its competitors' food products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 61 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

62.     As Defendant is reasonably aware, many American consumers are health-

conscious and seek out wholesome natural foods to ensure their pets keep a healthy diet. Because of this, consumers routinely take nutrition information into consideration in selecting and purchasing dog food items.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 62 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

63. Consumers also value "natural" ingredients for countless other reasons, including perceived benefits of avoiding disease, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and/or artificial and hazardous substances, and financially supporting the companies that share these values.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 63 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

64. Product package labels, including nutrition labels, are vehicles that convey nutrition information to consumers, which they can and do use to make purchasing decisions. As noted by food and Drug Administration Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet."

**ANSWER:** Central Garden denies the allegations contained in Paragraph 64 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

65. The prevalence of claims about nutritional content on food packaging in the United States has increased in recent years as manufacturers have sought to provide consumers with nutrition information and thereby influence their purchasing decisions. The results of a recent FDA Food Labeling and Package Survey found that approximately 4.8 percent of food products sold in the United States had either a health claim or qualified health claim on the food

package, and that more than half (53.2%) of the food products reviewed had nutrient content claims on the packaging.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 65 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

66. Consumers attribute a wide range of benefits to foods made entirely of natural ingredients. Consumers perceive "natural" foods to be higher quality, healthier, safer to eat, and less damaging to the environment.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 66 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

67. Catering to consumers' taste for natural foods is tremendously advantageous for business. In 2008, foods labeled with the word "natural" produced $22.3 billion in sales, a 10% increase from 2007, and a 37% increase from 2004. In 2009, sales jumped again by 4%.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 67 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

68. It was in an effort to capture the growing demand and to entice consumers to purchase its products that Defendant committed the unlawful acts detailed in this Complaint.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 68 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

69. Consumers lack the ability to test or independently ascertain the accuracy of a food product label, especially at the point of sale. Reasonable consumers must and do rely on the company to honestly report the nature of a food product's ingredients.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 69 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

70.     Moreover, not having the specialized food chemistry and regulatory knowledge necessary to make independent determinations thereof, a reasonable consumer would interpret the fine-print ingredient label in a way to be consistent with the front label representation.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 70 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

71.     Food product companies intend for consumers to rely upon their products' labels, and reasonable consumers do, in fact, so rely.  Those labels are the only available source of information consumers can use to make decisions on whether to buy "Natural" food products.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 71 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

72.     As a result of its false and misleading labeling, Defendant was able to sell its Products to thousands, if not hundreds of thousands of consumers, throughout the United States, and to profit handsomely from these transactions.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 72 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

### *Defendant's Knowledge of the Falsity of its Advertising*

73.     Defendant had knowledge of the representations that were made regarding the AvoDerm Natural products, insofar as all of those representations appeared on the AvoDerm Natural products' packages.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 73 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

74.     Defendant also knew what ingredients were added to each product, as (presumably) all product ingredients are listed on the product packages and all of the AvoDerm Natural products' ingredients are further disseminated on Defendant's website.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 74 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

75.     Defendant is governed by and has knowledge of the federal regulations that control the labeling of its food products and, thus, was aware that some of the ingredients have been federally declared as synthetic and/or artificial substances and/or require extensive processing to be safely used as a food ingredients.  Defendant has retained expert nutritionists, food chemists, and other scientists, and has spent much time and money in developing its own food technologies, such that it was aware that the synthetic and/or artificial substances used in its products are not natural.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 75 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

76.     As such, Defendant had knowledge of all facts demonstrating that its "natural" AvoDerm Natural products contain synthetic and/or artificial substances and that the products were falsely labeled.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 76 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

77.     The misrepresentations and omissions were uniform and were communicated to Plaintiffs, and to each member of each class, at the point of purchase and consumption.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 77 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

### *Purchasers of Misbranded AvoDerm Natural products Have Been Injured*

78.     Plaintiffs read and reasonably relied on the labels as described herein when buying AvoDerm Natural products.  The front label, alleging that AvoDerm Natural products are natural, appears as follows (for every single product alleged herein in the AvoDerm Natural

Grain Free line):

Peas, Salmon Meal, Potatoes, Pea Flour, Canola Oil (Preserved with Mixed Tocopherols), Tomato Pomace (Source of Lycopene), Apple, Avocado, Flax Seed (Source of Omega-3 Fatty Acid), Alfalfa Meal, Natural Flavor, Salt, Potassium Chloride, Vitamins (Choline Chloride, a-Tocopherol Acetate (Source of Vitamin E), Niacin, Calcium Pantothenate, Vitamin A Supplement, Ascorbic Acid (Source of Vitamin C), Pyridoxine Hydrochloride (Source of Vitamin B6), Thiamine Mononitrate (Source of Vitamin B1), Riboflavin Supplement, Vitamin B12 Supplement, Vitamin D3 Supplement, Biotin, Folic Acid), Minerals (Zinc Sulfate, Zinc Amino Acid Chelate, Ferrous Sulfate, Manganese Sulfate, Manganese Amino Acid Chelate, Copper Sulfate, Copper Amino Acid Chelate, Sodium Selenite, Calcium Iodate), Kelp Meal, Avocado Oil, Lecithin, Rosemary Extract, Sage Extract, Pineapple Stem (Source of Bromelain), Papain, Dried Bacillus Subtilis Fermentation Product, Dried Aspergillus Oryzae Fermentation Product.

Beef Meal, Peas, Potatoes, Chicken Fat (Preserved with Mixed Tocopherols), Tomato Pomace (Source of Lycopene), Pea Flour, Apple, Avocado, Flax Seed (Source of Omega-3 Fatty Acid), Alfalfa Meal, Natural Flavor, Salt, Potassium Chloride, Vitamins (Choline Chloride, a-Tocopherol Acetate (Source of Vitamin E), Niacin, Calcium Pantothenate, Vitamin A Supplement, Ascorbic Acid (Source of Vitamin C), Pyridoxine Hydrochloride (Source of Vitamin B6), Thiamine Mononitrate (Source of Vitamin B1), Riboflavin Supplement, Vitamin B12 Supplement, Vitamin D3 Supplement, Biotin, Folic Acid), Minerals (Zinc Sulfate, Zinc Amino Acid Chelate, Ferrous Sulfate, Manganese Sulfate, Manganese Amino Acid Chelate, Copper Sulfate, Copper Amino Acid Chelate, Sodium Selenite, Calcium Iodate), Kelp Meal, Avocado Oil, Lecithin, Rosemary Extract, Sage Extract, Pineapple Stem (Source of Bromelain), Papain, Dried Bacillus Subtilis Fermentation Product, Dried Aspergillus Oryzae Fermentation Product.

Ocean Fish Meal (Source of Omega 3), Peas, Tapioca Flour, Pea Flour, Chicken Meal, Chicken Fat (Preserved with Mixed Tocopherols), Dried Tomato Pomace, Avocado, Natural Flavor, Flax Seed, Dried Egg Product, Dried Chicory Root, Salt, Whey, Potassium Chloride, Vitamins (Choline Chloride, a-Tocopherol Acetate (Source of Vitamin E), Niacin, Vitamin A Acetate, Thiamine Mononitrate (Source of Vitamin B1), Calcium Pantothenate, Pyridoxine Hydrochloride (Source of Vitamin B6), Menadione Sodium Bisulfite Complex, Riboflavin Supplement, Ascorbic Acid (Source of Vitamin C), Vitamin D3 Supplement, Vitamin B12 Supplement, Folic Acid, Biotin), Minerals (Zinc Sulfate, Zinc Amino Acid Chelate, Iron Amino Acid Chelate, Ferrous Sulfate, Copper Sulfate, Manganese Amino Acid Chelate, Copper Amino Acid Chelate, Manganous Oxide Sodium Selenite, Calcium Iodate), Avocado Oil, Lecithin, Taurine, Calcium Carbonate, Parsley Flakes, Kelp Meal, DL- Methionine, Yucca Schidigera Extract, Inositol.

Turkey Meal, Peas, Tapioca Flour, Pea Flour, Chicken Fat (Preserved with Mixed Tocopherols), Dried Tomato Pomace, Herring Meal (Source of Omega 3), Avocado, Natural Flavor, Flax Seed, Dried Egg Product, Dried Chicory Root, Salt, Whey, Potassium Chloride, Vitamins (Choline Chloride, a-Tocopherol Acetate (Source of Vitamin E), Niacin, Vitamin A Acetate, Thiamine Mononitrate (Source of Vitamin B1), Calcium Pantothenate, Pyridoxine Hydrochloride (Source of Vitamin B6), Menadione Sodium Bisulfite Complex, Riboflavin Supplement, Ascorbic Acid (Source of Vitamin C), Vitamin D3 Supplement, Vitamin B12 Supplement, Folic Acid, Biotin), Minerals (Zinc Sulfate, Zinc Amino Acid Chelate, Iron Amino Acid Chelate, Ferrous Sulfate, Copper Sulfate, Manganese Amino Acid Chelate, Copper Amino Acid Chelate, Manganous Oxide, Sodium Selenite, Calcium Iodate), Avocado Oil, Lecithin, Taurine, Calcium Carbonate, Parsley Flakes, Kelp Meal, DL- Methionine, Yucca Schidigera Extract, Inositol.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 78 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

79.     Plaintiffs relied on Defendant's labeling, and based and justified the decision to purchase AvoDerm Natural products in substantial part, on these labels.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 79 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

80.     At point of sale, Plaintiffs did not know, and had no reason to know, that AvoDerm Natural products contained synthetic and/or artificial chemical ingredients.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 80 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

81.     At point of sale, Plaintiffs did not know, and had no reason to know, that AvoDerm Natural products were unlawful and misbranded.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 81 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

82.     Had Plaintiffs been aware of these material facts, they would not have bought AvoDerm Natural products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 82 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

83.     As a result of Defendant's unlawful misrepresentations, Plaintiffs and millions of others in Florida and throughout the United States purchased AvoDerm Natural products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 83 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

84.     Defendant's labeling as alleged herein is false and misleading and was designed

to increase sales of the AvoDerm Natural products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 84 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

85. Defendant's misrepresentations are part of its systematic labeling practice.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 85 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

86. A reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase AvoDerm Natural products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 86 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

87. Plaintiffs' purchase of AvoDerm Natural products damaged them.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 87 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

88. Such purchases damaged Plaintiffs because, *inter alia*, misbranded products are illegal and have no economic value.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 88 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

89. Such purchases damaged Plaintiffs because, *inter alia*, Plaintiffs had cheaper alternatives available and paid an unwarranted premium for AvoDerm Natural products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 89 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

90. All purchasers of AvoDerm Natural products were injured.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 90 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

## CLASS ACTION ALLEGATIONS

91.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in Florida who, within the Class Period, purchased, "AvoDerm Natural Grain Free Salmon Meal & Potato Formula for Dogs," "AvoDerm Natural Grain Free Red Meat Meal & Potato Formula for Dogs," "AvoDerm Natural Grain Free Ocean Fish & Chicken Meal Formula for Cats," and "AvoDerm Natural Grain Free Turkey Meal Formula for Cats."

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in paragraph 91 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

92.     The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in paragraph 92 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

93.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 93 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

94.     **<u>Numerosity:</u>** Based upon Defendant's publicly available sales data with respect to AvoDerm Natural products, it is estimated that the Class numbers are potentially in the

millions, and the joinder of all Class members is impracticable.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 94 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

95.     **<u>Common Questions Predominate:</u>**  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, for example:

a.      Whether Defendant engaged in unfair, unlawful or deceptive business practices by failing to properly package and label AvoDerm Natural products sold to consumers;

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 95(a) and states that the products named in the Complaint are made by a subsidiary of Central Garden.

b.      Whether the food products at issue were misbranded or unlawfully packaged and labeled as a matter of law;

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 95(b) and states that the products named in the Complaint are made by a subsidiary of Central Garden.

c.      Whether Defendant made unlawful and misleading claims regarding the "Natural" characteristic of the AvoDerm Natural products;

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 95(c) and states that the products named in the Complaint are made by a subsidiary of Central Garden.

      d.     Whether Defendant violated Florida's Consumer Protection Statues §§501.201-501.213 (2014), Florida Deceptive and Unfair Trade Practice Act, False Advertising pursuant to Fla. Stat. § 817.44 (2014), Breach of Express Warranty Pursuant to Fla. Stat. §672.313 (2014); Breach of Implied Warranties for Merchantability and Usage of Trade Pursuant to Fla. Stat. §672.314 (2014), was Negligent, or was Unjustly Enriched.

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 95(d) and states that the products named in the Complaint are made by a subsidiary of Central Garden.

      e.     Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 95(e) and states that the products named in the Complaint are made by a subsidiary of Central Garden.

      f.     Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiffs and the Class;

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 95(f) and states that the products named in the Complaint are made by a subsidiary of Central Garden.

      g.     Whether Defendant acted negligently by its deceptive practices;

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 95(g) and states that the products named in the Complaint are made by a subsidiary of Central Garden.

    h.    Whether Defendant was unjustly enriched by its deceptive practices.

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 95(h) and states that the products named in the Complaint are made by a subsidiary of Central Garden.

    96.    **Typicality:** Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased Defendant's products during the Class Period. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein, irrespective of where they occurred or were experienced. The injuries of each member of the Class were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 96 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

    97.    **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor their counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action,

and Plaintiffs and their counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharged those duties by vigorously seeking the maximum possible recovery for the Class.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 97 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

98. **Superiority:** There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they are not parties. Class Action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would create. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 98 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

99. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds

generally applicable to the Class, thereby making appropriate injunctive or equitable relief with respect to the Class as a whole.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 99 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

100.     The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 100 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

101.     Plaintiffs and their counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 101 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

102.     Plaintiffs are members of the Class they seek to represent. Plaintiffs' claims are typical of the Class members' claims. Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiff's claims are typical and representative of the Class.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 102 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

103.     There are no unique defenses that may be asserted against Plaintiffs individually, as distinguished from the Class. The claims of Plaintiffs are the same as those of the Class.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 103 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

104.     This class action is superior to any other method for the fair and efficient adjudication of this dispute.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 104 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

<u>**CAUSES OF ACTION**</u>
**COUNT I**

**VIOLATION OF FLORIDA CONSUMER PROTECTION
STATUTES §501.201- §501.213, FLORIDA DECEPTIVE
AND UNFAIR TRADE PRACTICES ACT**

105.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 104 above as if fully set forth herein.

**ANSWER:** Central Garden incorporates by reference its answers to paragraphs 1 through 104 of this Complaint as though fully set forth herein.

106.     Defendant's conduct constitutes unlawful, unfair and deceptive business acts and trade practices.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 106 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

107.     Defendant sold the AvoDerm Natural products in Florida during the Class Period.

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 107 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

108.     Florida Consumer Protection Statue §501.204 (2012) prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.  For the

reasons discussed above, Defendant has engaged in unfair, false, deceptive, untrue and misleading advertising in violation of Fla. Stat. §§501.201-501.213 (2014).

**ANSWER:** Central Garden denies the allegations contained in Paragraph 108 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

109. The Florida Deceptive and Unfair Trade Practices Act also prohibits any, "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in conduct of any trade or commerce." Defendant has violated Fla. Sat. §501.204's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the false and deceptive representations, and also through its omissions of material facts, as set forth more fully herein, and violating 21 U.S.C. §342, 21 U.S.C. §343, 21 U.S.C. §379aa-1, 15 U.S.C. §45 (a)(I), 49 Fed. Reg. 30999 (Aug. 2, 1984), Federal Food, Drug and Cosmetic Act §402(f)(1)(A), and the common law.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 109 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

110. Plaintiffs and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing to this date.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 110 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

111. Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201-501.213 (2014), in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged

benefits attributed to such conduct.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 111 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

112. As stated in this Complaint, Plaintiffs allege violations of consumer protection, unfair competition, and truth-in-advertising laws in Florida resulting in harm to consumers. Defendant's conduct constitutes violations of the public policies against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers as proscribed by Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201-501.213 (2014).

**ANSWER:** Central Garden denies the allegations contained in Paragraph 112 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

113. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 113 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

114. Defendant's claims, nondisclosures and misleading statements, as more fully set forth above and collectively as a scheme, were false, misleading and likely to deceive the consuming public within the meaning of Florida Deceptive and Unfair Trade Practices Act.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 114 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

115. Defendant's deceptive conduct constitutes a prohibited practice, which directly and proximately caused and continues to cause substantial injury to Plaintiffs and the other Class members. Plaintiffs and Class members have suffered injury in fact, actual damages, and have

lost money as a result of Defendant's unlawful, unfair and fraudulent conduct. Plaintiffs' damages are the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. Defendant's deceptively labeled, and falsely advertised, and misbranded products have little to no market value.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 115 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

116. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 116 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

117. Plaintiffs, on behalf of themselves, and all others similarly situated, seek restitution and disgorgement of all money obtained from Plaintiffs and the members of the Class collected as a result of unfair competitions, an injunction prohibiting Defendant from containing such practices, corrective advertising, including providing notification of the product's health risks, and all other relief this Court deems appropriate, consistent with Florida Deceptive and Unfair Trade Practices Act.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 117 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

Defendant reserves the right to assert additional defenses should additional facts come to its attention.

# COUNT II

## VIOLATION OF FLORIDA INTENTIONAL
## FALSE ADVERTISING STATUTE §817.44

118.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 104 above as if fully set forth herein.

**ANSWER:** Central Garden incorporates by reference its answers to paragraphs 1 through 104 of this Complaint as though fully set forth herein.

119.     Defendant knowingly and intentionally engaged in false advertising concerning the true characteristics of the ingredient contents of the AvoDerm Natural products. Defendant's conduct was consumer-oriented and this conduct had a broad impact on consumers at large.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 119 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

120.     Defendant's actions were unlawful and under the circumstances, Defendant had actual knowledge of the falsity, or at the very least ought to have known of the falsity thereof.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 120 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

121.     Fla. Stat. § 817.44 (2014) defines "false advertising," as, "invitations for offers for the sale of any property, real or personal, tangible or intangible, or any services, professional or otherwise, by placing or causing to be placed before the general public, by any means whatever, an advertisement describing such property or services as part of a plan or scheme with the intent not to sell such property or services so advertised."

**ANSWER:** Central Garden denies the allegations contained in Paragraph 121 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

122.     Defendant intentionally, and falsely advertised the AvoDerm Natural products in

Florida and throughout the United States.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 122 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

123.    As fully alleged above, by intentionally and knowingly advertising, marketing, distributing and selling the mislabeled AvoDerm Natural products to Plaintiffs and other members of the Class who purchased the products in Florida, Defendant engaged in, and continues to engage in, false advertising in violation of Fla. Stat. § 817.44 (2014).

**ANSWER:** Central Garden denies the allegations contained in Paragraph 123 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

124.    Defendant's misleading marketing, advertising, packaging and labeling of the AvoDerm Natural products were likely to deceive reasonable consumers.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 124 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

125.    Plaintiff and other members of the Class who purchased the AvoDerm Natural products in Florida were deceived.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 125 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

126.    Absent such injunctive relief, Defendant will continue to falsely and illegally advertise the AvoDerm Natural products to the detriment of consumers in the state of Florida.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 126 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

127.    As a direct and proximate cause of Defendant's violation of Fla. Stat. § 817.44 (2014), Plaintiffs and the members of the Class who purchased the AvoDerm Natural products in

Florida were injured when they paid good money for these illegal and worthless products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 127 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

128.     As a result of Defendant's unlawful false advertising practices, Plaintiffs and the members of the Class who purchased the AvoDerm Natural products in Florida, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to Plaintiffs and the members of the Class any money paid for the AvoDerm Natural products pursuant to Fla. Stat. § 817.44 (2014).

**ANSWER:** Central Garden denies the allegations contained in Paragraph 128 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

129.     Plaintiffs and the members of the Class are also entitled to attorneys' fees.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 129 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

Defendant reserves the right to assert additional defenses should additional facts come to its attention.

## COUNT III

### BREACH OF EXPRESS WARRANTY PURSUANT TO PRUSUANT TO § 672.313 FLORIDA STATUTES AND UNIFORM COMMERICAL CODE §2-313

130.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 104 above as if fully set forth herein.

**ANSWER:** Central Garden incorporates by reference its answers to paragraphs 1 through 104 of this Complaint as though fully set forth herein.

131.     Plaintiffs, and each member of the Class, formed a contract with Defendant at the

time Plaintiffs and the other members of the Class purchased the AvoDerm Natural products.
The terms of that contract included express promises and affirmations of fact made by Defendant
on the AvoDerm Natural products' packaging and through its marketing campaign, as described
above.  The AvoDerm Natural products' packaging and advertising constitute express warranties
and became part of the basis of the bargain, and is part of a standardized contract between
Plaintiffs and the members of the Class on the one end, and Defendant on the other.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 131 and states that the
products named in the Complaint are made by a subsidiary of Central Garden.

132.    The Uniform Commercial Code §2-313 provides that express warranties by the
seller are created when any affirmation of fact or promise is made by the seller to the buyer
which relates to the goods, and thus becomes part of the basis of the bargain, creates an express
warranty that the goods shall conform to the affirmation or promise.  In addition, any description
of the goods which is made part of the basis of the bargain creates an express warranty that the
goods shall conform to the description.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 132 and states that the
products named in the Complaint are made by a subsidiary of Central Garden.

133.    Florida has codified and adopted the provisions the Uniform Commercial Code
governing express warranties.  *See* Fla. Stat. §672.313 (2014).

**ANSWER:**  Central Garden lacks sufficient knowledge to admit or deny the allegations
contained in Paragraph 133 and states that the products named in the Complaint are made by a
subsidiary of Central Garden.

134.    AvoDerm Natural products are "goods" as defined in the various states'
commercial codes governing express warranties, including Florida.  At all times, and as detailed

above, Defendant expressly warranted that its products were "Natural."

**ANSWER:** Central Garden denies the allegations contained in Paragraph 134 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

135.    At the time of making these and other warranties with respect to the characteristics of AvoDerm Natural products, Defendant knew or should have known that it had breached the terms of the contract, including the express warranties with Plaintiffs and the Class, by providing the AvoDerm Natural products named, "AvoDerm Natural Grain Free Salmon Meal & Potato Formula for Dogs," "AvoDerm Natural Grain Free Red Meat Meal & Potato Formula for Dogs," "AvoDerm Natural Grain Free Ocean Fish & Chicken Meal Formula for Cats," and "AvoDerm Natural Grain Free Turkey Meal Formula for Cats" that contained the synthetic and/or artificial chemical ingredients tocopherols, ascorbic acid, lecithin, ferrous sulfate, manganese sulfate, and copper sulfate.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 135 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

136.    Members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of Defendant, and upon said express warranties, when purchasing AvoDerm Natural products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 136 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

137.    Plaintiffs and the Class purchased AvoDerm Natural products without knowledge that these products contained synthetic and/or artificial chemical ingredients; tocopherols, ascorbic acid, lecithin, ferrous sulfate, manganese sulfate, and copper sulfate.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 137 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

138. Due to Defendant's wrongful conduct as alleged herein, Plaintiffs and the Class could not have known about the true content of the AvoDerm Natural products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 138 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

139. As a direct and proximate result of Defendant's breach of its contract, including the breach of express warranties with respect to the AvoDerm Natural products, Plaintiffs suffered injuries as set forth above, entitling Plaintiffs to judgment and equitable relief against Defendant, as well as restitution, including all monies paid for the AvoDerm Natural products and disgorgement of profits from Defendant received from sales of the AvoDerem Natural products, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 139 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

140. All conditions precedent to Defendant's liability under this contract, including notice, have been performed by Plaintiffs and the Class.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 140 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

Defendant reserves the right to assert additional defenses should additional facts come to its attention.

**COUNT IV**

**BREACH OF IMPLIED WARRANTY: MERCHANTABILITY;
USAGE OF TRADE PURSUANT TO § 672.314 FLORIDA STATUTES AND UNIFORM
COMMERCIAL CODE §2-314**

141. Plaintiffs re-allege and incorporate by reference the allegations contained in

paragraphs 1 through 104 above as if fully set forth herein.

**ANSWER:** Central Garden incorporates by reference its answers to paragraphs 1 through 104 of this Complaint as though fully set forth herein.

142. The Uniform Commercial Code §2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of the kind.

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 142 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

143. Florida has codified and adopted the provisions the Uniform Commercial Code governing the implied warranty of merchantability. Fla. Stat. §672.314 (2014).

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 143 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

144. AvoDerm Natural products are "goods" as defined in the various states' commercial codes governing the implied warranty of merchantability, including Florida.

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 144 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

145. As designers, manufacturers, licensors, producers, marketers, and sellers of AvoDerm Natural products, Defendant is a "merchant" within the meaning of the various states' commercial codes governing the implied warranty of merchantability, including Florida.

**ANSWER:** Central Garden lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 145 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

146.    By placing the AvoDerm Natural products in the stream of commerce, Defendant impliedly warranted that the products are reasonably safe and that all claims on their packaging were true, i.e. "Natural."

**ANSWER:** Central Garden denies the allegations contained in Paragraph 146 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

147.    As merchants of the AvoDerm Natural products, Defendant knew that purchasers relied upon them to design, manufacture, license and sell products that were reasonably safe and not deceptively marketed, and in fact members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of Defendant and upon said implied warranties in purchasing and consuming the AvoDerm Natural products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 147 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

148.    Plaintiffs and the Class members purchased the AvoDerm Natural products for their intended purpose.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 148 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

149.    AvoDerm Natural products' defects were not open or obvious to consumers, including Plaintiffs and the Class, who could not have known about the true nature and contents of the AvoDerm Natural products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 149 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

150.     Plaintiffs, and each member of the Class, formed a contract with Defendant at the time Plaintiffs and the other members of the Class purchased the AvoDerm Natural products. The terms of that contract included implied promises and affirmations of fact made by Defendant on the AvoDerm Natural products' packaging and through its marketing campaign, as described above.  The AvoDerm Natural products' packaging and advertising constitute implied warranties, became parts of the basis of the bargain, and are parts of a standardized contract between Plaintiffs and the members of the Class on the one end, and Defendant on the other.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 150 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

151.     At all times, and as detailed above, Defendant impliedly warranted that its products were safe, effective and fit for use by consumers, including Plaintiffs and the Class, for their intended use, that they were of merchantable quality, and that they did not produce dangerous side effects.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 151 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

152.     At the time of making these and other warranties with respect to the safety, efficacy, testing and characteristics of AvoDerm Natural products, Defendant knew or should have known that it had breached the terms of the contract, including the implied warranties with Plaintiffs and the Class, by providing the AvoDerm Natural products named, "AvoDerm Natural Grain Free Salmon Meal & Potato Formula for Dogs," "AvoDerm Natural Grain Free Red Meat Meal & Potato Formula for Dogs," "AvoDerm Natural Grain Free Ocean Fish & Chicken Meal

Formula for Cats," and "AvoDerm Natural Grain Free Turkey Meal Formula for Cats" that contained the synthetic and/or artificial chemical ingredients tocopherols, ascorbic acid, lecithin, ferrous sulfate, manganese sulfate, and copper sulfate.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 152 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

153.    Members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of Defendant, and upon said implied warranties, when purchasing AvoDerm Natural products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 153 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

154.    Plaintiffs and the Class purchased AvoDerm Natural products without knowledge that these products contained synthetic and/or artificial chemical ingredients; tocopherols, ascorbic acid, lecithin, ferrous sulfate, manganese sulfate, and copper sulfate.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 154 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

155.    Due to Defendant's wrongful conduct as alleged herein, Plaintiffs and the Class could not have known about the true content of the AvoDerm Natural products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 155 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

156.    As a direct and proximate result of Defendant's breach of implied warranties and breach of merchantability, Plaintiffs and Class members have sustained injuries by purchasing the AvoDerm Natural products, which were not as represented, thus entitling Plaintiffs to judgment and equitable relief against Defendant, as well as restitution, including all monies paid

for the AvoDerm Natural products and disgorgement of profits from Defendant received from sales of the products, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 156 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

157.    All conditions precedent to Defendant's liability under this contract, including notice, has been performed by Plaintiffs and the Class.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 157 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

Defendant reserves the right to assert additional defenses should additional facts come to its attention.

## COUNT V

## NEGLIGENCE

158.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 104 above as if fully set forth herein.

**ANSWER:**  Central Garden incorporates by reference its answers to paragraphs 1 through 104 of this Complaint as though fully set forth herein.

159.    Defendant had a duty to represent its products accurately.  Defendant breached that duty by purposefully or negligently making misrepresentations of fact and omissions of material fact to Plaintiffs and the other Class members about the AvoDerm Natural products.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 159 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

160.    Defendant failed to label or advertise the AvoDerm Natural products in a lawful manner and violated duties owed to consumers by purposefully or negligently engaging in the

conduct described herein.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 160 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

161.    Plaintiffs and the other Class members, as a direct and proximate cause of Defendant's breach of its duties, were damaged by receiving worthless products, or at the very least, misbranded deceptively labeled products.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 161 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

162.    As described above, Defendant's actions violated a number of express statutory provisions designed to protect Plaintiffs and the Class.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 162 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

163.    Defendant's illegal actions constitute negligence *per se*.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 163 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

164.    Moreover, the statutory food labeling and misbranding provisions violated by Defendant are strict liability provisions.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 164 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

165.    By reason of the foregoing, Plaintiffs and the other Class members have suffered damages in an amount to be determined at trial, together with punitive damages.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 165 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

Defendant reserves the right to assert additional defenses should additional facts come to its attention.

## COUNT VI

## UNJUST ENRICHMENT

166.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 104 above as if fully set forth herein.

**ANSWER:**  Central Garden incorporates by reference its answers to paragraphs 1 through 104 of this Complaint as though fully set forth herein.

167.     As a result of Defendant's fraudulent and misleading labeling, advertising, marketing, and sales of the AvoDerm Natural products, Defendant was enriched at the expense of Plaintiffs and the Class.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 167 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

168.     Defendant sold the AvoDerm Natural products, which was a product that was illegally sold, illegally branded and had no economic value, to Plaintiffs and the Class.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 168 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

169.     It would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiffs and the Class in light of the fact that the products were not what Defendant purported them to be.

**ANSWER:**  Central Garden denies the allegations contained in Paragraph 169 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

170.     Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the Class of all monies paid to Defendant for the AvoDerm

Natural products at issue.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 170 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

171.    As a direct and proximate result of Defendant's actions, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

**ANSWER:** Central Garden denies the allegations contained in Paragraph 171 and states that the products named in the Complaint are made by a subsidiary of Central Garden.

Defendant reserves the right to assert additional defenses should additional facts come to its attention.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Defendant, Central Garden & Pet Company, respectfully requests that the Court enter an Order in its favor and against the Plaintiffs, dismissing the Complaint in its entirety, and entering a judgment in favor of Central Garden & Pet Company and against the Plaintiffs for Central Garden & Pet Company's reasonable attorneys' fees and costs, and for such other and further relief as this Court deems necessary.

Respectfully submitted this 13th day of March, 2015.

/s/ Trevor A. Thompson
**TREVOR A. THOMPSON**                    **RONALD Y. ROTHSTEIN**
Florida Bar No. 0068006                          Illinois Bar No. 6225965
tthompson@cphlaw.com                          RRothste@winston.com
CLARK PARTINGTON HART                    WINSTON & STRAWN LLP
  LARRY BOND & STACKHOUSE              35 West Wacker Drive
106 East College Avenue, Suite 600          Chicago, IL 60601-9703
Tallahassee, FL  32301                            (312) 558-7464
(850) 320-6827                                       (312) 558-5700 (fax)
(850) 597-7591 (fax)                               <u>Admission to N.D. Fla. forthcoming</u>

*Attorneys for Defendant Central Garden &*
*Pet Company*

<u>**CERTIFICATE OF SERVICE**</u>

       I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the following parties via the electronic filing system of the Northern District of Florida on the date appearing on the Clerk's CM/ECF electronic docket to all parties that have requested notice according to the notice settings of the individual recipient:

Tim Howard, J.D., Ph.D.
HOWARD & ASSOCIATES, P.A.
2120 Killarney Way, Suite 125
Tallahassee, FL 32309
Telephone: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

*Attorney for Plaintiffs*

                             /s/ Trevor A. Thompson
                             **TREVOR A. THOMPSON**